IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **MICHAEL BRAD TORRES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-cv-177 |
| | § | |
| | § | JURY DEMANDED |
| | § | |
| **PETROTECH SOLUTIONS, LLC** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Michael Brad Torres hereby files this, his Original Complaint, against Defendant PetroTech Solutions, LLC for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

### I.   PARTIES, JURISDICTION AND VENUE

1. Plaintiff Michael Torres ("Plaintiff" or "Torres") is currently a citizen and resident of Gladewater, Texas.

2. Defendant PetroTech Solutions, LLC ("PetroTech" or "Defendant") is a Louisiana limited liability company. Defendant's Texas offices are located at 3000 FM 2276 Henderson Texas 75652. Defendant PetroTech Solutions, LLC will be served by and through CT Corporation System, 1999 Bryan St., Dallas, Texas 75201-3136.

3. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

4. The acts alleged herein occurred in Rusk County, Texas.

## II.     ADMINISTRATIVE REMEDIES EXHAUSTED

5.      Plaintiff timely filed a charge with the EEOC alleging violations of the ADA by PetroTech. Prior to institution of this lawsuit, the EEOC issued a right to sue letter less than 90 days prior to the filing of this Complaint. All conditions precedent to the institution of this lawsuit have been fulfilled.

## III.    FACTUAL BACKGROUND

6.      Plaintiff, Torres served as a driver for PetroTech from July 29, 2014 until he was terminated on July 31, 2020. Torres was the first driver hired to run trucks out of the Texas yard.

7.      Torres had a car accident on February 18, 2020 while he was heading home from work at PetroTech Solutions in which his vehicle was struck by a drunk driver. In the accident, Torres suffered severe injuries to his leg and foot.

8.      During the time Torres was off work due to the severity of his injuries, Lamar Rentz (owner) and Scott George (manager), both checked on his medical progress along with other management personnel. There are several texts where PetroTech officials represented that Plaintiff should not worry about his job, that he was a very valuable asset to the company and that his job would be waiting on him when he recovered.

9.      Torres was released to go back to work on July 1, 2020. Torres sent the release to return to work from his doctor to Lamar Rentz and Scott George. The week prior to his return-to-work date, Torres received a call from the PetroTech DOT lady Lori about taking a DOT physical in order to return to work. Torres was informed he would have to pay for the DOT physical per Scott George. Torres had never paid for a DOT physical prior to that time.

10.     On June 30, 2020, Torres received a phone call from Lamar Rentz. Rentz inquired of Torres whether he was positive and whether he had a full duty release to come back to work, to which Torres replied yes. Torres was asked multiple times regarding whether he has a full duty

release.

11. Torres was also told by Rentz that the company was "going and blowing since I [he] been gone and if I can't [he couldn't] go and blow like everyone else, he don't need me [him] back." Rentz also told Torres: "Everything has been running smoothly and if there is an issue when you come back, I'll run your ass off. You better not be fucking limping around the yard saying my fucking foot hurts either." When Torres informed Rentz he has a limp, Rentz said: "…well my son had a limp, and he was starting linebacker in school he fought through it. So, I better not hear you fucking limping screaming my fucking foot or I'll run your ass off. There better not be no bullshit or I'll run your ass off. If you can't go and blow, I don't need you!" Torres informed Rentz he was able to perform the essential functions of his just not as fast as he did before the wreck.

12. Torres returned to work on July 1, 2020 and was told to sit on the yard. Then Torres received a call from Mathew O'Neil (Vice President) stating that the company was going to treat him like a new hire. Torres was required to sit on the yard and do safety training for a week. The next week Torres was required to ride with another driver. The following week, Torres was required to have another driver ride with him to do an evaluation on him.

13. Torres was told that the company was evaluating him to see if they needed to keep sending another driver with him. After the week of riding with other drivers Torres was still riding along with other drivers. Torres was allowed to drive with Duston Hudnall a few times and when they got to locations Hudnall sat in the truck and played on his phone while Torres did all of the work. After several days, Torres was out on location with a tech named David Pippen. After talking a few minutes Hudnall said we needed to go because they had work to do. Pippen stated: "I only see one of y'all working" and Hudnall replied "I'm only doing what I was told." Hudnall said "Scott George told me that Brad was to go on the biggest loads and longest routes, and we are to run him ragged."

14. The next week was the same still with Torres riding with other drivers. The last week of July, Torres worked Monday and Tuesday then stayed on the yard Wednesday and Thursday cleaning up the facility. On Friday Mathew O'Neil and Michael Rentz (Lamar's son) came and told Torres: "We are doing a lay off and your name is on the list to be cut. Get anything that belongs to you out of our trucks, and we will need to get you to sign this severance agreement." Plaintiff refused to sign the severance agreement and was escorted off the property. Plaintiff had received no notice of any disciplinary action against him prior to his termination. Torres alleges that he was selected for inclusion in the lay off because of his disability.

### IV.    CAUSE OF ACTION

### AMERICANS WITH DISABILITIES ACT

15. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 14 as if fully stated herein.

16. From the time of Plaintiff's auto accident on February 18, 2020, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2).  More particularly, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of such an impairment, and/or was regarded by PetroTech as having such an impairment.

17. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8).  More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job as driver.

18. PetroTech terminated Plaintiff from the position of driver because of his actual or perceived disability in violation of the ADA.

19. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an

individual with a disability within the meaning of the ADA.

20. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

21. The unlawful employment practices described above were intentional and were committed with malice or with reckless indifference to the federally protected civil rights of Plaintiff.

## V.   DAMAGES

22. As a direct and proximate result of PetroTech's discrimination on the basis of disability and violation of the ADA Plaintiff has suffered lost wages and benefits and lost employment opportunities.

23. Defendant's denial of employment to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

24. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

25. Plaintiff is entitled to recover his reasonable and necessary attorney's fees pursuant to 42 U.S.C. § 2000e.

## VI.   JURY DEMAND

26. Plaintiff requests trial by jury on all claims.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a. Judgment against Defendant for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay), in amount to be determined;

b. Judgment against Defendant for Plaintiff's compensatory damages in an amount to be determined;

c. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

d. Costs of suit, including attorney's fees;

e. The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Hommel Law Firm
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone/Facsimile

ATTORNEY FOR PLAINTIFF